**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

AUG 1 6 2019

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR  A  WARRANT  TO  OBTAIN )
RECORDS, LOCATION INFORMATION, )
INCLUDING  PRECISION  LOCATION )
INFORMATION,       CELL       SITE )
INFORMATION,   AND   OTHER )
SIGNALING       INFORMATION )
ASSOCIATED WITH THE CELLULAR )
TELEPHONE HAVING THE NUMBER )
(314) 701-1589

No. 4:19 MJ 6292 PLC
**FILED UNDER SEAL**

## APPLICATION

COMES NOW the United States of America, by and through its attorneys, Jeffrey B.

Jensen, United States Attorney for the Eastern District of Missouri, and Jason Dunkel, Assistant

United States Attorney for said District, and hereby makes application to this Court for a warrant

and order, pursuant to Title 18, United States Code, Sections 2703(c)(1)(A) and 3123, authorizing

agents/officers of the Federal Bureau of Investigation (FBI) (hereinafter referred to as

"investigative agency(ies)"), and other authorized federal/state/local law enforcement agencies, to

obtain records and location information, including precision location information, cell site location

information, and other signaling information, associated with the following cellular telephone,

which is further identified as follows:

**TELEPHONE NO.:** (314) 701-1589

(hereinafter the "**Subject Cellular Telephone** ").

## I.    Introduction & Relief Requested

1.    The undersigned applicant for the Government is an Assistant United States

Attorney in the Office of the United States Attorney for the Eastern District of Missouri, and an

"attorney for the Government," as defined in Fed. R. Crim. P. 1(b)(1)(B).  Therefore, pursuant to Title 18, United States Code, Sections 2703(c) and 3122(a)(1), the undersigned may apply for an Order authorizing the disclosure of the telecommunication records and information requested herein.

2.      The **Subject Cellular Telephone** is serviced by Metro by T-Mobile (hereinafter referred to as "the Service Provider").  The records and information requested herein are directed at location-related information and subscriber information associated with the **Subject Cellular Telephone**, and may include information related to when the **Subject Cellular Telephone** is located in a protected space, such as a residence.  This application does not seek to compel or acquire the disclosure of the content of any communications.

3.      FBI has probable cause to believe that the **Subject Cellular Telephone** is currently being used in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Section(s)  841, 843(b), and 846, and other offenses of Federal law (hereinafter referred to as "the subject offenses"), by **Anthony Caldwell** and whose whereabouts are currently unknown.

4.      The Government makes this application upon a showing of probable cause. Attached to this application and incorporated by reference as if fully set out herein is the affidavit of Special Agent Daniel Zwiesler, FBI, which alleges facts in order to show that there is probable cause to believe that evidence of the commission of the above-described subject offenses can be obtained by locating and monitoring the location of the **Subject Cellular Telephone**, without geographic limitation within the United States, including by obtaining precision location information (e.g., GPS information), cell site information, signaling information, and records

2

concerning the **Subject Cellular Telephone** for the time period beginning July 1, 2019, through forty-five (45) days from the date of the requested warrant -- i.e., July 1, 2019 to September 29, 2019, 11:59 p.m. (CT).

5.      The present application requests relief in three forms. First, the application requests relief in the form of precision location information, including GPS information, associated with the **Subject Cellular Telephone**. Second, the application requests subscriber records and cell site information, which does not include precision location information, associated with the **Subject Cellular Telephone**. Third, the application requests authorization for the installation and use of pen register and trap-and-trace devices.

## II.      Precision Location Information Request

1.      The Government requests a warrant directing the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System (GPS) information, but not the contents of any communications, associated with the **Subject Cellular Telephone**, for the time period beginning July 1, 2019, through forty-five (45) days from the date of the requested warrant -- i.e., July 1, 2019, to September 29, 2019, 11:59 p.m. (CT).

2.      The Service Provider is a service provider within the meaning of Title 18, United States Code, Section 2510(15), and as such, is subject to Title 18, United States Code, Section 2703(c)(1)(A) which states:

>            (c)      Records concerning electronic communication service or remote computing service.--(1) A governmental entity may require

a provider of electronic communication service or remote computing service to disclose a record of other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity--

(A)   obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure...by a court of competent jurisdiction....

3.   The Court has jurisdiction to issue a warrant for the disclosure of precision location information, as requested herein, because it is "a court of competent jurisdiction," as defined in Title 18, United States Code, Sections 2711(3), and 2703(a), (b), and (c). Specifically, the Court has jurisdiction over the offense being investigated.

4.   Title 18, United States Code, Section 2703(g) provides that an officer is not required to be present for the service or execution of a warrant issued under Section 2703. In particular, Section 2703(g) states:

Notwithstanding section 3105 of this title, the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber or customer of such service.

5.   Title 18, United States Code, Section 2703(c)(3) permits the government to obtain the requested information and records without providing notice to any subscriber or customer. In particular, Section 2703(c)(3) states: "A governmental entity receiving records or information under this subsection is not required to provide notice to a subscriber or customer."

### III.   Cell Site Location Information Request

1.   The Government requests a warrant directing the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type

4

of wire and/or electronic communications, and any other applicable service providers, to provide certain telecommunication records and information, including cell site location information, but not the contents of any communication, for the time period beginning July 1, 2019, through forty-five (45) days from the date of the requested warrant -- i.e., July 1, 2019, to September 29, 2019, 11:59 p.m. (CT).  In particular, the Government requests the following telecommunication records and information:

(1)     subscriber information and all telephone numbers, ESN, MIN, IMEI, MSID or IMSI numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, and primary long-distance carrier;

(2)     subscriber information available for any originating telephone number;

(3)     Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search, which provides records of originating and terminating caller information for calls at the **Subject Cellular Telephone**) for the above-specified time period;

(4)     cellular telephone records and information pertaining to the following, for the above-specified time period:

(a)     call detail information (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

(b)     cell site activation information, including information identifying the antenna tower receiving transmissions from the **Subject Cellular Telephone**

5

number, and any information on what portion of that tower is receiving a transmission from the **Subject Cellular Telephone** number, at the beginning and end of a particular telephone call made to or received by the **Subject Cellular Telephone** number;

        (c)     numbers dialed;

        (d)     call duration;

        (e)     incoming numbers if identified;

        (f)     signaling information pertaining to that number;

        (g)     a listing of all control channels and their corresponding cell sites;

        (h)     an engineering map showing all cell site tower locations, sectors and orientations; and

        (i)     subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the **Subject Cellular Telephone**.

        (j)     historical location estimates, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD) and

        (k)     Internet Protocol (IP addresses) utilized by and signaled to and from the **Subject Cellular Telephone**.

    2.    The Service Provider is a service provider within the meaning of Title 18, United States Code, Section 2510(15), and as such, is subject to Title 18, United States Code, Section 2703(c)(1)(A) which states:

(c)     Records concerning electronic communication service or remote computing service.--(1) A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record of other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity--

(A)     obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure...by a court of competent jurisdiction....

3.      The Court has jurisdiction to issue a warrant for the disclosure of requested telecommunications records, including cell site records because it is "a court of competent jurisdiction," as defined in Title 18, United States Code, Sections 2711(3), and 2703(a), (b), and (c). Specifically, the Court has jurisdiction over the offense being investigated.

4.      Title 18, United States Code, Section 2703(g) provides that an officer is not required to be present for the service or execution of a warrant issued under Section 2703. In particular, Section 2703(g) states:

Notwithstanding section 3105 of this title, the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber or customer of such service.

5.      Title 18, United States Code, Section 2703(c)(3) permits the government to obtain the requested information and records without providing notice to any subscriber or customer. In particular, Section 2703(c)(3) states: "A governmental entity receiving records or information under this subsection is not required to provide notice to a subscriber or customer."

### IV.     Pen Register, Trap-and-Trace Request

1.　　　The Government's application seeks an Order, pursuant to Title 18, United States Code, Section 3122, authorizing the installation and use of pen register and trap-and-trace devices, including enhanced caller identification, as defined in Title 18, United States Code, Section 3127, without geographic limitation within the United States, and including an Order authorizing the installation and use of a pen register to record or decode dialing, routing, addressing, or signaling information transmitted by the **Subject Cellular Telephone** number further identified herein, and a trap-and-trace device, including enhanced caller identification, which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the **Subject Cellular Telephone** number, direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, for the time period beginning July 1, 2019, through forty-five (45) days from the date of the requested warrant -- i.e., July 1, 2019, to September 29, 2019, 11:59 p.m. (CT).

2.　　　In making this application, the Government does not seek the contents of any communication, such that other legal process would be required.

3.　　　As previously outlined, the Government certifies that the information likely to be obtained through the aforesaid pen register and trap-and-trace devices, including enhanced caller identification, is relevant to an ongoing criminal investigation.

4.　　　The Government further requests that the Order direct the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, here incorporated by reference, and any other applicable service

8

providers, to initiate caller identification on the **Subject Cellular Telephone** number listed above, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers.

5.     The Government further requests that the Order direct the furnishing of information, facilities, and technical assistance, as necessary, to unobtrusively accomplish the installation and use of the pen register and trap-and-trace devices, including enhanced caller identification, by the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications and any other applicable service providers, and with a minimum of disruption of normal telephone service.

6.     The Government further requests that the Order direct that the results of the pen register and trap-and-trace devices, including enhanced caller identification, be provided to the agents/officers of the investigative agency(ies) at reasonable intervals for the duration of the Order.

## V.     Changed Numbers, Compensation and Sealing

1.     The Government requests that should the **Subject Cellular Telephone** and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of any Order granted as a result of this application, that the Court order the request for pen register and trap-and-trace devices remain in effect for any new telephone to which the **Subject Cellular Telephone** listed above is changed, throughout the effective period of such Order.

2.     The Government further requests that the Order direct that the lead investigative agency provide the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service

providers, just compensation for reasonable expenses incurred in providing such information, facilities and technical assistance.

## VI.   Sealing, Notification and Miscellaneous Considerations

1.      Pursuant to Title 18, United States Code, Section 2703, the Government requests that the Court direct that the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall provide the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, with the following:

(1) subscriber information;

(2) length of service (including start date);

(3) the types of service utilized;

(4) instrument number or other subscriber number or identity, including any temporarily assigned network address;

(5) all available names, addresses, and identifying information, and other subscriber and service feature information;

(6) toll records including incoming and outgoing telephone numbers;

(7) credit information, billing information, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned **Subject Cellular Telephone,**

for the telephone numbers being dialed to and from the aforementioned **Subject Cellular Telephone** at reasonable intervals for the time period beginning July 1, 2019, through forty-five

10

(45) days from the date of the requested warrant -- i.e., July 1, 2019, to September 29, 2019, 11:59 p.m. (CT).

2.       Pursuant to Title 18, United States Code, Section 2703(c)(3), the Government entity or agency receiving these records or information as a result of this application and accompanying warrant and order will not provide notice to the subscriber or customer of the **Subject Cellular Telephone**.

3.       This Court has authority under Title 18, U.S.C., Section 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.*

4.       If the subjects were notified about the existence of the requested warrant, the subjects could destroy evidence. Accordingly, there is reason to believe that notification of the existence of the warrant will seriously jeopardize the investigation, including giving the subjects an opportunity to: flee, destroy and/or tamper with evidence; change patterns of behavior; or notify confederates. *See* Title 18, U.S.C., Section 2705(b)(2), (3), and (5).

5.       Based on the foregoing, pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2) and 2705(b), the Government requests that the Court direct the Service Provider and the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, not to disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this

11

Order, to a subscriber or lessee or to any other person, except that the provider may disclose the warrant and any Order to an attorney for the provider for the purpose of receiving legal advice.

6.      The information requested herein does not require a physical intrusion or physical trespass into any protected space.   Accordingly, it is respectively requested that the warrant authorize the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain the location information described herein at any time, day or night.

7.      The Government further requests that the Order direct that the investigative agency(ies) provide the telecommunication providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, just compensation for reasonable expenses incurred in providing such information, facilities and technical assistance.

8.      In light of the ongoing nature of the investigation as reflected in the attached affidavit, and because disclosure at this time would seriously jeopardize the investigation, including by giving the subject(s) an opportunity to destroy and/or tamper with evidence and flee, applicant requests that the application, affidavit and warrant be sealed.

WHEREFORE, on the basis of the allegations contained in this application, and on the basis of the affidavit of Special Agent Daniel Zwiesler, FBI, which is attached hereto and made a part hereof, applicant requests this Court to issue a Warrant authorizing agents/officers of the FEDERAL BUREAU OF INVESTIGATION, and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information associated with the **Subject Cellular Telephone**.

12

I declare under penalty of perjury that the foregoing is true and correct to the best of my current knowledge, information, and belief.

Dated this 6th day of August, 2019.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

JASON DUNKEL, #65886MO
Assistant United States Attorney

13

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

AUG 1 6 2019

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN )
RECORDS, LOCATION INFORMATION, )
INCLUDING PRECISION LOCATION )
INFORMATION, CELL SITE )
INFORMATION, AND OTHER )
SIGNALING INFORMATION )
ASSOCIATED WITH THE CELLULAR )
TELEPHONE HAVING THE NUMBER )
(314) 701-1589 )

No. 4:19 MJ 6292 PLC

**FILED UNDER SEAL**

## AFFIDAVIT

I, Daniel Zwiesler, being first duly sworn, depose and state as follows:

### Introduction

1.     I make this affidavit in support of an application for a warrant and order pursuant

to Rule 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for information associated

with cellular telephone **(314) 701-1589** (hereinafter referred to as the **"Subject Cellular**

**Telephone"**) to require Metro by T-Mobile (hereinafter the "Provider") and any other application

provider to disclose to the United States location information, including precision location

information, transactional and subscriber data and cell site location information, and the

installation and use of other pen register and trap and trace devices associated with the **Subject**

**Cellular Telephone** as described in Attachment B to the proposed warrant and order.

2.     I am a Special Agent (SA) with the FBI and have been so employed since

September 2012.  Prior to this assignment, I was employed as a Police Officer by the City of

Dayton Police Department for approximately ten years.  I have a Bachelor of Arts degree from

Saint Louis University. I received law enforcement training from the FBI Academy at Quantico, Virginia and state academies and seminars. I have been assigned to criminal investigations throughout my tenure as a Special Agent, working bank robberies, car jackings, weapons violations, fugitives, Hobbs Act Robberies, narcotics and violent crimes against children. I am currently assigned to the FBI St. Louis Division's Violent Crime Task Force.

3.      During the course of my law enforcement experience, I have participated in numerous investigations of violent crime. I am familiar with and have used normal methods of investigation, including, but not limited to, visual surveillance, questioning of witnesses, search and arrest warrants, informants, pen registers, precision location information, confidential sources and undercover agents, and court-authorized wire interceptions as well as GPS devices tracking in or on vehicles.

4.      The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. As this affidavit is submitted for the limited purpose of establishing probable cause to locate and monitor the location of a cellular telephone as part of a criminal investigation, it does not set forth all of my knowledge regarding this matter.

5.      Upon information and belief, and as explained in greater detail below, the cellular telephone bearing number **(314) 701-1589** (hereinafter the **"Subject Cellular Telephone"**), which is being serviced by Metro by T-Mobile, (hereinafter referred to as "the Service Provider"), has been used, and is presently being used, in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Section(s) 841, 843(b), and 846 and other

violations of Federal law (hereinafter referred to as "the subject offenses"), by others known and unknown.

6.    The present affidavit is being submitted in connection with an application of the Government for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the location of the **Subject Cellular Telephone**.

7.    There is probable cause to believe that the location information associated with the **Subject Cellular Telephone** will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

## Investigation and Probable Cause

8.    The Federal Bureau of Investigations is assisting local law enforcement officers with the investigation of a shooting that occurred from a moving vehicle on a St. Louis area interstate. During the course of the shooting investigation, law enforcement has learned that the suspect is engaged in trafficking of controlled substances. The investigation has clearly demonstrated that the **Subject Cellular Telephone** is being used in connection with the ongoing violations of the subject offenses.

9.    On April 30, 2019, at approximately 5:15 PM, Miriah Patrick was traveling westbound on Interstate 70 in her silver Nissan Maxima. At this time, unknown individuals traveling westbound in a silver four-door Mercedes-Benz began shooting at Ms. Patrick as she

3

continued driving westbound on the highway.  Ms. Patrick was struck numerous times by bullets fired from the Mercedes-Benz.  Ms. Patrick had a video camera in her vehicle which recorded the Mercedes-Benz as it passed her immediately after the shooting.  In the video, an unknown black male subject could be seen leaning outside of the suspect vehicle on the passenger side.  The subject could be seen holding what appeared to be a rifle.  The video clearly showed the suspect with the rifle had dread-lock hair.

10.     Ms. Patrick was able to exit the highway and call for help.  The St. Louis Metropolitan Police Department (SLMPD) and the St. Louis Metropolitan Fire Department (SLMFD) responded.  Ms. Patrick was transported to an area hospital and received treatment for multiple gunshot wounds sustained during the assault.

11.     Following the shooting, the investigative agencies released a photo of the suspect leaning out of the passenger side of the silver Mercedes-Benz holding a firearm.  On May 2, 2019, the FBI and SLMPD received an anonymous tip concerning the shooting on April 30, 2019.  The tip advised Anthony Caldwell, aka "Peterman," was the shooter pictured in the photo.

12.     A search of multiple databases enabled investigators to further identify Anthony Caldwell's date of birth, social security account number, previous addresses and criminal history. Record checks verified Caldwell's documented nickname was "Peta Man."  Caldwell's criminal history included convictions for Unlawful Possession of a Firearm, Felony Resisting Arrest, Tampering with a Motor Vehicle 1st Degree and Possession of a Controlled Substance. Additionally, Caldwell had prior arrests for Robbery 2nd Degree, Burglary 2nd Degree and Distribution of a Controlled Substance.  Caldwell was released from the Missouri Department of Corrections Eastern Reception Diagnostic and Correctional Center on April 14, 2019.

13.     On May 8, 2019, a Drug Enforcement Agency (DEA) Confidential Source[1] (CS #1) was debriefed by the DEA and your affiant. CS #1 advised the first name of the person involved in the April 30, 2019, shooting on Interstate 70 was Anthony or Antonio. CS #1 further stated Anthony or Antonio was recently released from prison and known as a "wheel man." CS #1 did not know Anthony or Antonio's last name but advised the subject's nickname was "Peda Man." CS #1 was shown a color photo of Caldwell. CS #1 immediately identified the picture as the person he / she knew as Peda Man.

14.     On May 8, 2019, your affiant met with St. Louis County Police Department (SLCPD) Detective Nicholas Payne and a Confidential Source[2] (CS #2). CS #2 told investigators he or she saw the media coverage concerning the April 30, 2019, shooting on Interstate 70. Prior to working with law enforcement, CS #2 purchased user amounts of heroin/fentanyl from the subject. CS #2 also witnessed "J" and other unknown subjects conduct drug sales. CS #2 knew the subject as "J." During prior purchases from "J," CS #2 observed multiple firearms in the suspect's vehicle to include an AK style rifle. The suspect's vehicle was usually occupied by four subjects.

15.     On May 8, 2019, the SLCPD and your affiant utilized CS #2 to conduct a controlled purchase of heroin/fentanyl from "J." CS #2 contacted "J" at cellular telephone number 314-250-9063. Investigators provided funds to CS #2 and maintained surveillance on CS #2 before, during

---

[1] Your affiant has not previously worked with CS #1 before, but CS #1 has previously worked with law enforcement officers from the DEA. CS #1's work has proven reliable in past investigations with the DEA.

[2] CS #2's information has been verified by the three controlled buys. CS #2 does not have any pending or open charges. Law enforcement has compensated CS#2 $200 for participating in two of the controlled buys.

5

and after the controlled purchase. CS #2 was able to successfully purchase $160 worth of fentanyl. CS #2 advised "J" was with three other unknown subjects when the controlled purchase was made.

16. On May 22, 2019, the FBI in conjunction with the Hybrid Task Force from the SLCPD conducted a second controlled purchase of heroin/fentanyl from "J" utilizing CS #2. CS #2 contacted "J" at cellular telephone number 314-250-9063. "J" directed CS #2 to an alley off of North Sarah Street at McPherson Avenue. CS #2 was told during phone calls to look for a black Chevy Impala. A black Chevy Impala arrived in the area and CS #2 successfully purchased $160 worth of fentanyl. CS #2 observed other vehicles complete transactions with the black Chevy Impala and possible hand-to-hand transactions with unknown pedestrians in the immediate area. During a debrief after the controlled purchase, CS #2 advised he had spoken to "J" to arrange the purchase but a different subject showed up and sold the fentanyl.

17. On or about May 24, 2019, CS #2 advised "J" had changed his telephone number to 314-701-1589 (Subject Cellular Telephone).

18. On July 23, 2019, CS #2 was shown a picture of Caldwell. CS #2 immediately identified the pictured subject as "J." CS #2 confirmed "J" was the subject who directed CS #2 to the locations where drug purchases were conducted and had purchased fentanyl directly from "J."

19. On August 14, 2019, the FBI in conjunction with the SLCPD Hybrid Task Force conducted a controlled purchase of fentanyl from Caldwell, aka "Peta Man," aka "J," utilizing CS #2. CS #2 contacted Caldwell at the Subject Cellular Telephone. During a series of telephone calls, Caldwell eventually directed CS #2 to the area of Shreve Avenue and Interstate 70. Once in the area, Caldwell directed CS #2 to the 4700 block of Penrose Street. Caldwell arrived shortly after directing CS #2 to Penrose Street. CS #2 was able to successfully purchase $120 worth of

6

fentanyl from Caldwell.  CS #2 observed additional transactions between Caldwell and other vehicles parked in the 4700 block of Penrose Street.

20.     The investigation has clearly demonstrated that the **Subject Cellular Telephone** is being used in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Section(s) 841(a)(1), 843(b) and 846.

21.     There is probable cause to believe that the location information associated with the **Subject Cellular Telephone** will lead to evidence of the aforementioned subject offenses in that:

    a.  Location information may provide evidence that Caldwell was present at or near the locations of controlled purchase;

    b.  Location and signaling information will allow investigators to determine locations which Caldwell visits, which may reveal the location of fruits of the drug distributions, or proceeds or fruits of the drug trafficking;

    c.  Location and signaling information will allow investigators to determine associates of Caldwell, who may have been involved in the conspiracy to distribute narcotics.

22.     In this application, Law Enforcement seeks records from Caldwell's use of the **Subject Cellular Telephone** from July 1, 2019.

### Investigative Considerations and Techniques

23.     Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

24.     Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system.

7

Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

25.     Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received.  For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact.  Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities.  Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

26.     Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

27.     Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.  A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.  The provider could have this information because each cellular device has one or more unique

8

identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service and the cellular antenna or tower records those identifiers.

28.     Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

29.     Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data

9

or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as "precision location information" or "PLI" data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

30.    In order to locate the **Subject Cellular Telephone** and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the government. The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap-and-trace data.

31.    None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to

10

daytime use only. Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

32. The monitoring of the location of the **Subject Cellular Telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

### Conclusion

Based on the above information, there is probable cause to believe that the **Subject Cellular Telephone** is currently being used in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Section(s) 841(a)(1) and 846 and other offenses of Federal law, by **Anthony Caldwell**, and others known and unknown.


8-16-2019
DATE

DANIEL ZWIESLER
SPECIAL AGENT
FBI

Sworn to and subscribed before me this ___16___ day of August, 2019.

HONORABLE PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri


11